UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN ANTONIO OROZCO-SALAZAR,<br>Petitioner,<br>v.<br>WARDEN DESERT VIEW FACILITY, ADELANTO ICE PROCESSING CENTER, et al.,<br>Respondents. | Case No. 5:26-cv-04555-KES<br><br>ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY |

## I. INTRODUCTION

Juan Antonio Orozco-Salazar ("Petitioner") filed a counseled petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 8.) The Petition is granted and Respondents are directed to immediately release Petitioner from custody.

## II. PROCEDURAL HISTORY

Petitioner filed the present Petition on August 12, 2026. (Dkt. 1.) The Petition raises one claim: that Respondents violated Petitioner's rights under the Fifth Amendment Due Process Clause when ICE detained him without prior notice or a hearing. (Pet. at 5-8.) He seeks both release from custody and an injunction preventing Respondents from re-detaining him absent notice, a pre-deprivation hearing, and an opportunity to be heard. (Id. at 9.)

Respondents answered the Petition on August 19, 2026. ("Answer" at Dkt. 9.) The Answer states that Petitioner "appears to be entitled to request and receive an initial bond hearing pursuant to Rodriguez Vazquez v. Bostock, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026)…." (Answer at 2.) They argue, "Petitioner is properly detained pending such potential bond proceedings because this is the Petitioner's first detention based upon a Visa overstay. … While Petitioner also seeks immediate release, to the extent Petitioner would be entitled to any remedy via the Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under § 1226(a)." (Id.) They further argue, "[T]o the extent the instant Petitioner has not yet requested such a bond hearing from the Immigration Court, the Petitioner has not yet properly exhausted their available administrative remedies, and their Petition is defective on that basis." (Id.)

Petitioner replied the same day. ("Reply" at Dkt. 10.) He argues that Respondents "misunderstand the crux of Petitioner's habeas claim: [Petitioner] contends that his arrest and detention, without any *pre-deprivation* process, violated his due process rights. … The appropriate remedy for this violation is an immediate release from custody, not a statutory bond hearing." (Id. at 2) (emphasis added). He also argues, "The administrative exhaustion requirement does not apply in a case like this one, in which a petitioner claims 'that he was not afforded constitutionally adequate procedural safeguards prior to the deprivation of his liberty interest.'" (Id. at 3 n.1 (quoting R.N.G. v. Semaia, No. 26-cv-2839-

DSR, 2026 WL 2089544, at *3 (C.D. Cal. July 14, 2026)).

## III. FACTUAL RECORD

Petitioner is a Mexican national who first entered the United States on August 4, 2023, through the H-2A Temporary Agricultural Worker program. (Pet. at 2, ¶ 1.) He was admitted until October 31, 2023 or November 10, 2023. (Pet. Ex. A / Dkt. 1-1 at 2 (I-94 showing legal visitor status); Pet. Ex. H / Dkt. 1-1 at 20 (H-2A visa stamp in Petitioner's passport).) Petitioner's employment was scheduled to last until October 31, 2023. (Pet. Ex. C / Dkt. 1-1 at 7 (attachment to Department of Labor Form ETA-790 completed by Petitioner's employer).)

Petitioner ended his employment on or around October 1, 2023, about 30 days before the set end date. (Pet. at 2, ¶ 4; Pet. Ex. F / Dkt. 1-1 at 16 (declaration from Petitioner's partner).) According to U.S. Citizenship and Immigration Serviced ("USCIS") policy, program employers must notify USCIS within 2 workdays if the "H-2A worker finishes the labor or services for which he or she was hired more than 30 days earlier than the end date specified in the H-2A petition." (Pet. at 2, ¶ 4); USCIS, H-2A Temporary Agricultural Workers, Employment-Related Notifications to USCIS, https://www.uscis.gov/working-in-the-united-states/temporary-workers/h-2a-temporary-agricultural-workers (last accessed Aug. 24, 2026). The notification to USCIS must include the noncitizen's name, address, and phone number. Id.

Petitioner remained in the U.S. for the next three years. During that time, he worked as a handyman, participated in community groups, forged friendships, and was an active member of his community. (Pet. at 7, ¶ 24.) In October or November 2023, he began a long-term relationship with his U.S.-citizen partner, and they plan to marry. (Pet. at 7, ¶ 24.)

The government took no action to remove him until July 11, 2026, about three years after his H-2A visa expired. On that date, ICE arrested him outside of his home. (Pet. at 3, ¶ 7; Pet. Ex. F / Dkt. 1-1 at 16 (declaration from Petitioner's

partner).)

There is no evidence that Petitioner has been given a bond hearing since his arrest by ICE. Based on Respondents' Answer, it appears that DHS deemed Petitioner ineligible for a bond hearing as an "applicant for admission" under 8 U.S.C. § 1225(b)(2). (See Answer at 2 (admitting Petitioner is now entitled to a bond hearing under Bostock).)

DHS began removal proceedings against Petitioner shortly after his arrest. His removal case remains pending, and he has not been ordered removed. See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 221-462-879 (Mexico), last accessed Aug. 24, 2026).) Petitioner remains in ICE custody in Adelanto, California. ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 221-462-879 (Mexico), last accessed Aug. 24, 2026).)

## IV. DISCUSSION

### A. General Due Process Standard.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the

event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

**B. Liberty Interest and Private Interest Affected.**

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

Respondents' Answer appears to argue that Petitioner does not have a legally cognizable liberty interest in release from custody because "this is the Petitioner's first detention based upon a Visa overstay." (Answer at 2.) This appears to be an attempt to distinguish cases finding that, once a noncitizen is released on parole, this creates a liberty interest in release. See, e.g., Pinchi, 792 F. Supp. 3d at 1032-33; Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); Omer G. G. v. Kaiser, No. 25-cv-01471, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025).

This is not the only situation in which courts have found that noncitizens have a protected liberty interest in release from custody, however. District courts generally reason that "the government's *knowing* decision not to detain an individual creates a liberty interest in their continued release." Anderson v. Chernut, No. 26-cv-01960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (emphasis added). Some courts have found this includes noncitizens who have overstayed their visa. See, e.g., Tello Vazquez v. Mullin, No. 26-cv-

2039-KKE, 2026 WL 1911507, at *2 (W.D. Wash. July 2, 2026) ("The Government could have detained Petitioner at any time after the expiration of his visa in 2021 but did not do so until years later, after Petitioner developed significant ties to the United States. Petitioner's interest in maintaining his liberty is therefore strong, in the absence of evidence that he is a flight risk or a danger to the community."). Courts often cite evidence that the government had been aware of the noncitizen's continued presence in the U.S. and yet had taken no action to detain the noncitizen for months or years after the visa expired. See, e.g., Huang v. Blanche, No. 2:26-cv-02157-BAT, 2026 WL 2271901, at *1, 8 (W.D. Wash. July 15, 2026) (finding liberty interest where the noncitizen overstayed a tourist visa and applied for asylum, but was not arrested by ICE until about 4 years later); Benipal v. Rokosky, No. 26-cv-01306-RM-CDB, 2026 WL 1355010, at *1, 10 (D. Ariz. Apr. 24, 2026) (finding noncitizen who had overstayed his visa had a liberty interest in release where he had not been detained for years after his visa has expired, even though in that time he had been issued a deficient notice to appear, been granted permission to work in the U.S., and filed an application to register permanent residence or adjust status); Kalkan v. Chestnut, No. 26-cv-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026) ("[T]he petitioner entered the United States on a nonimmigrant visa and subsequently applied for asylum such that immigration officials were aware of the petitioner's presence, initially approved of that presence, and when the status expired, did not promptly detain the petitioner based on that expiration of status."); Kharitonova v. Albarran, No. 26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) ("Petitioner has a vested liberty interest in remaining free from detention as she has lived for the last 13 years. … The government's decision not to detain Petitioner 'when it processed her asylum application, took her biometrics, referred her asylum case to EOIR, and advised her to appear for multiple hearings over a period of years,' likewise gave rise to 'a liberty interest on Petitioner's part that she would remain

free unless she violated her conditions of release.' … The government's insistence Petitioner lacks a liberty interest because it never before sought to detain her is specious. … Although the government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained.").[1]

Here, there is no evidence that Petitioner applied for asylum or a work authorization after he had overstayed his visa. However, Petitioner cites evidence that his sponsoring employer for his H-2A visa was required to notify USCIS that he had ended his employment early, including by informing USCIS of Petitioner's last known address and phone number. The evidence also shows that Petitioner was arrested at his home, which implies that Respondents were aware of his presence in the U.S. and his home address. There is no evidence that DHS became newly aware of Petitioner's presence in the U.S. because of, for example, an arrest by state or local criminal authorities.[2]

Accordingly, given this evidence, as well as the evidence that Petitioner continued to reside in the U.S. for three years and formed strong community and family ties, the Court finds that he has a liberty interest in release from custody.

---

[1] Compare Li v. Larose, No. 26-cv-1614-JLS-MMP, 2026 WL 948362, at *1-2 (S.D. Cal. Apr. 8, 2026) ("Respondents … argue that any 're-detention' due process argument—i.e., that Petitioner was re-detained without notice or evidence of changed circumstances—fails because Petitioner has never been previously detained or released. … The Court agrees with Respondents. … Petitioner entered the United States on a B2 visitor's visa which expired in August of 2020…. If Petitioner was previously detained and released on parole, a pre-deprivation consideration of his individualized circumstances would be required. … However, here, Petitioner has never been detained, and thus, there has been no initial determination by DHS that Petitioner poses no danger to the community and is not a flight risk.").

[2] Because Respondents have not submitted any evidence in this case, they do not explain how they became aware of Petitioner's location.

**C. Risk of Erroneous Deprivation and Value of Additional Procedural Safeguards.**

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94). In the present case, Respondents have never explained—either to Petitioner at the time of his arrest or in the present proceedings—what factual basis ICE has (if any) for finding that Petitioner is a flight risk or danger to the community. A pre-deprivation hearing would require the government to produce its evidence of this and give Petitioner an opportunity to challenge that evidence. Requiring the government to do so *before* Petitioner's arrest gives him a meaningful opportunity to retain counsel and collect evidence. This is a significant procedural safeguard.

**D. Countervailing Government Interest.**

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov v. Marin, No. No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (same). Additionally, the burden of a pre-detention hearing is low. In immigration court, custody hearings are routine and impose a minimal cost. In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days. Respondents have presented no evidence to the contrary.

Accordingly, all three Mathews factors weigh in favor of providing

Petitioner with a pre-deprivation hearing prior to any detention.

**E. Appropriate Remedy is Release and Prospective Injunctive Relief, Not Post-Deprivation Hearing.**

Respondents argue that, to the extent Petitioner is entitled to any relief on the Petition, the appropriate remedy is a bond hearing rather than release from custody. (Answer at 2.) The Court disagrees.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing. Many courts have found that a post-detention bond hearing is insufficient in this context. See, e.g., Gudavasov, 2026 WL 712827, at *3, 2026 U.S. Dist. LEXIS 49484 (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief.").

In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 882-83 (C.D. Cal. Jan. 23, 2026); Nieves v. Mullin, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at *4, 2026 U.S. Dist. LEXIS 77391, at *11 (C.D. Cal. Apr. 1, 2026); Fernandez v. Semaia, No. 25-cv-03412-SPG-MBK, 2026 WL 136229, at *7, 2026 U.S. Dist.

LEXIS 10909, at *25 (C.D. Cal. Jan. 13, 2026).

Based on the weight of this persuasive authority, the Court will enter both types of relief here.

## V. CONCLUSION

IT IS THEREFORE ORDERED that:

1. The Petition is granted.
2. Respondents shall **immediately release** Juan Antonio Orozco-Salazar (A# 221-462-879) from custody.
3. If Respondents have not released Petitioner **within three (3) days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.
4. Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.[3]

DATED: August 25, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

[3] To the extent the Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).